## IN THE COURT OF APPEALS OF IOWA

No. 24-0102
Filed May 8, 2024

**IN THE INTEREST OF R.N., B.N., and J.N.,**
**Minor Children,**

**J.N., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Cameron M. Sprecher of Sprecher Law Office, P.L.C., Mason City, for appellant father.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Jane M. Wright, Forest City, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights to three children, born in 2008, 2016, and 2019.[1] He claims the State failed to prove the grounds for termination cited by the juvenile court, termination is not in the children's best interests, a six-month extension would eliminate the grounds for termination, and the court should apply a permissive exception to preclude termination. Upon review, we affirm.

## I.      *Background Facts and Proceedings*

This family most recently came to the attention of the Iowa Department of Health and Human Services (the department) in mid-2021,[2] upon reports of domestic violence in the home and substance use by the parents. A no-contact order was entered between the parents. Shortly after they agreed to abstain from drinking and complete substance-use evaluations, they were arrested for public intoxication. The father was also arrested for violating the no-contact order. The children were adjudicated in need of assistance in December but remained in the family home with the mother.

The children were removed from the mother's custody in August 2022, when she appeared for court under the influence of alcohol. The court entered a review order the next week, noting "[t]here are ongoing concerns with parental sobriety, condition of the home, ongoing violations of the no-contact order between parents, and lack of follow through with services." Specifically with respect to the

---

[1] The mother's appeal was dismissed as untimely.
[2] The family had prior department involvement in 2016, 2019, and 2020, during which the parents had little follow through with services.

father, the court stated, "Father is not employed. He was participating in services at Prairie Ridge but was recently arrested. He needs to re-engage with treatment services to address continued struggles with sobriety."

By early 2023, the department caseworker reported a "tremendous change in [the] parents," including engagement in services and better interactions with the children. The caseworker stated "reunification continues to remain the goal" for the family. By July, the parents were again living together. They were participating in treatment services but admitted to drinking alcohol. In August, the caseworker reported she "d[id] not want to discount the progress [the parents] have made however concerns remain with their ability to maintain long-term sobriety and stability." R.N., who was in high school, was residing with the paternal great grandparents. The court noted R.N., who was engaging in therapy, "stresses about her parents and becomes frustrated with their decisions and lack of progress." The younger children, B.N. and J.N., were placed together in a different relative's home. Doctors opined the children should not be around cigarette smoke due to their breathing issues, and the department moved visits back to the provider's office due to concerns about cigarette smoke in the parents' home.

The State initiated termination-of-parental-rights proceedings in September 2023. Subsequently, the parents' involvement in the case stagnated. The termination hearing took place in December. The parents did not attend the hearing. The father spoke to the caseworker earlier that day and stated he "thought the [children] were best where they were at" because "he knew he couldn't meet their needs." The caseworker testified aside from that communication, the parents "haven't had any communication—consistent communication with the

department or services or their children for that matter in several months." The department and guardian ad litem recommended termination of parental rights.

The court entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2023). The father appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon our review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home, *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Analysis

*A. Grounds for Termination.* The father challenges both grounds the juvenile court relied on to terminate his parental rights. "When the juvenile court terminates parental rights on more than one statutory ground," we may affirm "on any ground we find supported by the record" evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (f). Relating to that paragraph, the father claims the State failed to show by clear and convincing evidence the children could not be returned safely to his custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4).

The father had a short period of progress in early 2023, when he engaged in services and had positive interactions with the children. But his progress was short-lived. As noted, the father discontinued contact with the department. At the termination hearing, when the caseworker was asked if she received "any indication" the parents were "making progress toward reunification," she

responded, "Unfortunately, no. It has become over the past three months increasingly evident that things have gotten worse for them. Any progress that they had as far as employment or housing or services set up have all [ceased]." The father acknowledged he continued to struggle with sobriety. As the caseworker reported, "even with a significant number of supportive services neither of these parents have been able to demonstrate the ability to meet their own needs, let alone that of their children." Based on these and other facts in the record (including the family's lengthy history of department involvement), we agree with the court's finding the children could not be returned to the father's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) was satisfied.

*B. Best Interests.* Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2). When determining best interests, we give primary weight to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental and emotional conditions and needs of the child[ren]." *Id.* Here, these factors all weigh in favor of termination. We agree with the juvenile court's analysis on this point:

> All of the children are doing well in their current placements. [B.N.] has made significant progress in school and [J.N.]'s speech has greatly improved since removal. This family has a lengthy history of involvement with the department. Services started in 2016 and lasted for approximately five months. Services were reinitiated in 2019 and lasted for approximately three months. Since this case began, the family has received numerous services. Parents were able to complete SafeCare services. However, parents have not been able to maintain consistency in services. Parents have been unable to maintain sobriety and their participation in substance use and mental health treatment has been inconsistent. . . . In November, [the father] admitted to the department that he was struggling with alcohol use. Parents are not consistently meeting with providers. Parents have not been able to maintain housing and are both currently unemployed. While there have been short periods

of stability and sobriety, parents have been unable to move past supervised interactions and the children cannot be returned home today. [The father] has only attend[ed] one interaction since the beginning of October. Prior to removal, the children were living a chaotic life filled with instability, parental substance use, and domestic violence. The children need permanency and their current homes can provide a stable, healthy, and loving environment.

*C. Exception to Termination.* The father claims termination is not in the children's best interests because he has a "very close bond" with the children. "Consideration of the parent-child bond is not a part of our best-interests analysis." *In re E.S.*, No. 23-0590, 2023 WL 4104126, at *2 (Iowa Ct. App. June 21, 2023). However, section 232.116(3)(c) allows the court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The caseworker testified the father's visits with the children "greatly declined" in the months preceding the termination hearing: "since the beginning of October, he has only had one visit with the kids and that was the Wednesday I think it was before Thanksgiving. Other than that, he has had no interactions." Although the record shows the father and children share a bond, the father has not established termination of his parental rights will be detrimental to the children.

*D. Additional Time.* The father requests "an additional six months to work towards reunification and to show that he is capable of being a father to his [three] children." To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). When asked whether she believed the department had "done everything [it] could to assist these

parents in getting to a healthy spot in their life," the caseworker responded, "I do. I actually think that we've actually gone above and beyond for them." For example, when the father acknowledged his relapses in fall 2023, the caseworker set forth the department's response to "help him regain sobriety": "[S]ervices as far as mental health, medication management, substance use, we talked about housing, getting him to the shelter, those were all offered again. They have been offered on an ongoing basis, but they were again offered in November." Unfortunately, around that time, the father's engagement in services essentially "stopped." The father expressed to service providers he "would like to be able to fight, but [he] know[s] that [he] can't do it and it's not fair to the girls." On this record, the court had no basis on which to grant an extension.

We affirm the termination of the father's parental rights.

**AFFIRMED.**